# THE PARTIES

## PLAINTIFF.

Richard C. White Jr.
91 Maureen Way
Plymouth, MA. 02360

vs

## DEFENDANTS

04 10524 RWZ

Trustees of Boston University, et-al

| | |
|---|---|
| John Silber | Pres. B.U. |
| Joseph Mercurio | V.P. B.U. |
| Robert Smith | Atty. B.U. |
| Robert Shea | Chief B.U.P.D |
| Larry Cuzzi | Sargeant BUPD |
| Daniel Healy | Sargeant BUPD |
| Robert Molloy | Captain BUPD |
| Anne Shea | V.P. BU. |

**04 10524 RWZ**

## FACTS

Plaintiff is a Christian. In all areas mentioned in the facts summary below, the Plaintiff claims his religious rights/beliefs were violated as protected under Federal Law. The Plaintiff claims that his belief in Jesus Christ, as Lord, resulted in Boston University officials engaging in unethical practices against the Plaintiffs employment at the University.

Plaintiff claims the Defendants acted together and employed police misconduct by their being dishonest and deceitful in all their reporting regarding the Plaintiff employment records and history as he served as a police officer at Boston University.

Plaintiff was hired on December 22, 1987 as a Patrolman in the Boston University Police Department (BUPD). A condition of employment for all officers under the rank of Sergeant is membership to the Boston University Police Patrolmen's Association, (BUPPA).

Plaintiff was a Patrolman and served on the Executive Board of the BUPPA as Chief Shop Steward for two years, (1988-1990) and as Union President for ten years, (1990-2000). At all times Plaintiff was a member in good standing as both an employee and a union member.

Plaintiff was forced to resign the position of Patrolman at Boston University on June 10, 2002 after 15 years of service, under great duress, for fear of being fired by Boston University.

Plaintiff accepted employment with the Plymouth Police Department on June 6, 2002, and is currently employed as a police officer in Plymouth, MA.

Plaintiff, while employed at Boston University as a police officer, confronted the "Trustees of Boston University, Et-Al", by certified letter, dated April 25, 2002. The Plaintiff sent the letter in an effort to resolve conflict and to advise the Trustees of evidence that the Plaintiff was being "set up" to be fired. The Trustees are aware that Plaintiff has knowledge of police cover-up. These include larcenies, discriminatory conduct, wrongful interference in internal investigations, police officers filing false police reports and conflict of interest within the Command Staff of the BUPD. Plaintiff spoke with the President of Boston University, John Silber, in his effort to confront certain unethical issues involving conflict of interest. Plaintiff discovered his support of police cover-up and other wrong doings. This letter led to defamation of the Plaintiff by University officials.

Plaintiff claims BUPD Police Chief Robert Shea, B.U. Vice President Anne (Verge) Shea, and B.U. President John Silber instructed certain named Defendants in their slanderous obstruction in the Plaintiffs Labor/Management relationships.

RECEIPT # _____
AMOUNT $ _____
SUMMONS ISSUED _____
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _____
DATE _____

Plaintiff alleges his civil rights were violated as granted under the Constitution of the United States of America (42 U.S.C. 1983), when Plaintiff was delivering videotapes on November 4, 2003 to various Boston University locations. The supervisors and Boston University officials involved in that incident employed "criminal negligence". Whereby their wanton and willful disregard of the probable harmful consequences of their act could have caused serious bodily harm or death to the public at large, the Plaintiff or other responding officers under their command. Their actions were "grossly negligent", whereby having knowledge of the laws of Massachusetts and being sworn special police officers. Sergeant Cuzzi and Sergeant Healy intentionally failed to perform their duty in their reckless order given to all officers over a police radio. Their orders to affect an arrest, which they had no, right of arrest for, blatantly disregards the consequences as affecting the life or property of another.

Plaintiff's civil rights were violated regarding the November 4, 2003 incident. Boston University Police Sergeant Cuzzi and Sergeant Healy committed an assault and threat upon the Plaintiff. Plaintiff overheard the Boston University Police radio broadcast, ordering for Plaintiff's immediate arrest for threats. The broadcast was not transmitted to the Boston Police and Brookline Police, but rather stayed "in-house". BUPD Sergeant Cuzzi and Sergeant Healy ordered all BUPD officers to search and find Plaintiff and have the Plaintiff placed under arrest for threats, a crime that allows no statutory right of arrest. BUPD officers were ordered held over on shift for two hours by the Command Staff. Officers were ordered/placed at various University locations to affect an unlawful arrest upon the Plaintiff. At all times the Plaintiff was placed in immediate fear of being apprehended for an unlawful arrest.

The Plaintiff also believes that the commission of that act to "affect an unlawful arrest" upon the Plaintiff, thereby indicates "malfeasance" during the performance of their duties.

The Plaintiff also believes that their conduct constitutes "misfeasance" during the improper performance of a lawful act.

Plaintiff is a victim of malicious prosecution for an incident that occurred on November 4, 2003. The BUPD, under direction of the "Trustee's of Boston University, Et-Al", notified the Brookline Police Department of the incident. Plaintiff was not afforded "due process of law" during initial investigation. Plaintiff subsequently charged with three counts of criminal trespassing in the Brookline District Court, (Doc. # 0309CR001079). A verdict of **Not Guilty** entered by Judge May, Brookline District Court on 2/24/2004. Plaintiff was "Pro Se" at all court proceedings.

On November 5, 2003, BUPD Captain Molloy, Brookline Police Detective Sergeant McCarthy and Detective McHugh appeared at Plaintiff's place of employment, the Plymouth Police Department. They met with Plymouth Police Captain Botieri. Plaintiff was off duty and ordered to report to Plymouth Police Headquarters. Plaintiff was given Miranda rights and answered all questions, cooperating fully. Plaintiff was shown a written letter given to him while employed as a police officer at Boston University. The letter was dated May 9, 2002. Plaintiff was accused of trespassing on three properties by

BUPD and Brookline Police Department which stemmed from the November 4, 2003 incident. Plaintiff was told by the investigating officers that the May 9, 2002 letter written by BUPD Deputy Chief Cappucci was a trespass warning. Plaintiff advised investigating officers that the May 9, 2002 letter was an order given to the Plaintiff while employed as a Police Officer at Boston University. Plaintiff also advised them that the letter was an order to undergo a review with Dr. Scott, who Boston University had retained to evaluate the Plaintiff's fitness to serve as a police officer. Plaintiff advised them that all orders were met and followed. Plaintiff informed investigating officers that the May 9, 2002 letter was 18 months old and that the Plaintiff had visited Boston University on previous other occasions. Plaintiff also advised that Boston University had knowledge of the Plaintiff's previous visits and had never mentioned a trespass warning or order. Plaintiff informed them that if a trespass warning or order did exist, Plaintiff, being a police officer, would have complied with that order. Plaintiff pointed out to investigating officers that the letter was an order as stated in the first sentence. Plaintiff pointed out that the letter was an order from BUPD Deputy Chief Cappucci to BUPD Officer White. Plaintiff advised investigating officers that since the 18 month old letter was addressed to BUPD Officer White as an order, the Plaintiff no longer took orders from BUPD and now received orders from Plaintiff's superior officers within Plymouth Police Department. Plaintiff stated to investigating officers that Plaintiff never thought nor took that letter as a trespass notice/warning. Plaintiff asked BUPD Captain Molloy as to why Plaintiff was not advised of the trespass order/warning when Plaintiff resigned the position of police officer with BUPD. Plaintiff insisted that if BUPD's letter was meant as an order/notice, Plaintiff was not advised by any University official. Plaintiff informed investigating officers of the elements of the crime for trespassing and how they were not met. Investigating officers armed with this information chose to ignore Plaintiff and subsequently charged Plaintiff with three counts of criminal trespassing.

Upon information and belief, after the meeting was over, Plymouth Police Captain Botieri asked that BUPD Captain Molloy step out of the meeting room. Captain Botieri informed the two investigating Brookline Police detectives that during the Plaintiff's hiring process, Captain Botieri was told by the Plaintiff of wrong doings done to him while union president employed at the BUPD. Plaintiff had reported to Captain Botieri a grievance filed at B.U. over a three-day suspension the Plaintiff had received. That suspension involved fabrication and police officers submitting false police reports that resulted in the Plaintiff's three-day suspension. Captain Botieri also told Brookline Police detectives that he and another Lieutenant Detective personally went to BUPD as part of Plymouth Police Department's investigation of newly hired police officers. The Plymouth Officers were not welcomed at B.U. as is customary within the profession.

Plymouth Police Captain Botieri advised Plaintiff that employee personnel file was missing the three-day suspension from the file folder during his background check.

Plaintiff reports during the course of his court trial the Brookline Police Dept. never appeared at any of the court proceedings.

Plaintiff reports receiving a letter from Boston University Attorney Robert Smith on January 13, 2004 that neither he nor the University are a party to any of the criminal charges pending against the Plaintiff in the Brookline District Court. Attorney Smith also declined to participate in the Plaintiff's formal discovery request, indicating in the letter that the Plaintiffs requests were informal.

Plaintiff reports that Attorney Smith was at all courtroom proceeding regarding the Plaintiff's criminal matter.

On December 1, 2003, the Plaintiff was arraigned in the Brookline District Court on three counts of criminal trespassing. At the Plaintiff's arraignment he indicated to the court he waived his right to counsel and would represent himself "Pro Se". During the course of the arraignment Boston University Attorney Robert Smith, and a Norfolk County Assistant District Attorney, were present in the courtroom. Plaintiff motioned to the Court (Judge May) that Attorney Smith's letter dated November 5, 2003 was objected to. Plaintiff pointed out to the Court that the letter refrained the Plaintiff from "communicating with Boston University, or any of it's employees or agents in any manner or form, including, but not limited to, telephone calls, e-mails, package deliveries or correspondence." The Plaintiff informed the Court that Boston University would lead one to believe that we live in Nazi Germany. The Plaintiff stated he had friends he communicates with, who currently work at Boston University, and would need to contact them with regard to his defense. Judge May ordered the Plaintiff, (and made note on the Court documents), to only stay away from Boston University property and from Joseph Mecurio and John Silber. Plaintiff agreed to Judge May's stipulations.

On February 25, 2004, the day after a not guilty verdict was delivered by Judge May, in favor of the Plaintiff, the Plaintiff was contacted by several police officers at Boston University. These officers informed the Plaintiff of a Roll-Call Posting on the Boston University Roll Call Board dated February 24, 2004. Officers advised the Plaintiff that it was a 4-page Roll Call Notice. One of the 4 pages contained on the Roll Call posting was the aforementioned letter dated November 5, 2003 written by Attorney Robert Smith. With regards to that letter, Judge May ruled that the Plaintiff only stay away from Boston University property and from Joseph Mecurio and John Silber. The Plaintiff also has concerns regarding one of the other 4 pages posted on the Roll Call, that being a proof of service from the Town of Plymouth Police Department. Plaintiff was questioned by B.U. officers as to whether the Town of Plymouth was also issuing the trespass notice. This posting was an intentional act to continue the defamation of Plaintiff's character. Plaintiff discussed the Boston University's roll-call posting with Plymouth Police Captain Botieri.

During Plaintiff's criminal trial testimony was heard from B.U. Deputy Chief Cappucci and B.U. Captain Diorio that B.U. Police Chief Robert Shea wanted the Plaintiff fired because of his union involvement while employed as a police officer for Boston University.

Testimony was heard that B.U. Police Chief Robert Shea ordered Deputy Chief Cappucci down to the Plymouth Police Department to speak with Plymouth Police Chief Robert

Pomeroy. B.U. Police Chief Shea instructed Deputy Chief Cappucci to inform Plymouth Chief Robert Pomeroy not to hire the Plaintiff because he was a union troublemaker and was not fit to be a cop.

Testimony was heard that B.U. Police Chief Robert Shea had stolen a computer from the Boston University Police Department.

Testimony was heard that Chief Shea was involved in the cover up of certain officers who were involved and having complaints filed against them involving racial profiling.

Testimony was heard that the Plaintiff's incident involving the 3-day suspension he received from Chief Shea was never even investigated.

Testimony was heard from the author of the May 9, 2002 letter, Deputy Chief Cappucci, that the letter in no way was intended or meant to be a trespass order.

Testimony was heard from three of the Plaintiff's witnesses, all Boston University police officers, that at no time did they have knowledge of a trespass order against the Plaintiff. Plaintiff has reason to believe that Boston University, an institution of higher education, is very powerful, has an extreme amount of money at their disposal, and has great influence over all state governing authorities that might hear this matter. This was evident when the Brookline Police Department responded with B.U. Police Department to the Plymouth Police Department on the initial investigation of misdemeanor trespass charges being filed against the Plaintiff. It should be noted that after arraignment the Brookline Police Department was no longer involved nor gave testimony relative to the criminal complaint that they themselves filed in the Brookline District Court.

Plaintiff believes that Boston University influenced the Norfolk County District Attorney's Office.

Plaintiff believes that Boston University influenced the Brookline Police Department.

Plaintiff believes that Boston University influenced the International Brotherhood of Police Officers (IBPO), the Plaintiff's International Union.

On February 24, 2004, on the morning of the trial the Plaintiff witnessed a Boston University unmarked police cruiser pull up in front of the Brookline District Court. The operator handed Boston University Attorney Robert Smith an envelope that contained a document that was used at a sidebar with Judge May, Plaintiff, ADA Nicholas Gordon, and Attorney Robert Smith. That document which was submitted to Judge May shows that it was prepared by ADA Nicholas Gordon, author, although Boston University clearly had possession of this document prior to the sidebar which indicates questionable practice/wrongdoing.

During the aforementioned sidebar B.U. Attorney Robert Smith reported to the court that Chief Robert Shea, one of the Plaintiff's witnesses in his defense, was at home ill under

doctor's advisement. Upon the Plaintiff's request that Attorney Smith be removed from the court as a hostile witness, Attorney Smith informed Judge May that he was at court to represent B.U. Police Chief Robert Shea. Plaintiff suggested to Judge May that Attorney Robert Smith was in contempt of court by reporting that on February 3, 2004, Chief Shea was at home under doctor's advisement. Plaintiff informed Judge May that three B.U. police officers were sequestered in the hallway that would give testimony that on February 3, 2004, Chief Shea was in fact at B.U. Police Station the entire day.

Plaintiff attempted and exhausted every available means at his disposal to notify University officials as to these erroneous charges. University officials after receiving notification verbally by the Plaintiff and by numerous written correspondence by the Plaintiff, refused to investigate any of Plaintiff's claims.

WHEREFORE, the Plaintiff demands judgment against the defendants for damages and such other relief as this court deems just;

that the Defendants compensate the Plaintiff for any lost wages and/or benefits incurred as a result of their discriminatory and/or intentional defamation of character;

that the Plaintiff be awarded an amount of money, which will fairly compensate him for his emotional and physical pain and suffering;

that the Defendants pay Plaintiff future costs in attorney fees resulting from this action;

that the Defendants be ordered to pay Plaintiff punitive damages;

that the Defendants be ordered to pay Plaintiff exemplary damages;

that the Defendants be ordered to pay consequential damages;

such relief as may be just and proper and/or make Plaintiff whole.

Plaintiff requests a Jury Trial on All Issues and Causes of Action Contained in this Complaint.

*Richard C. White* PRO SE

Richard C. White Jr., "PRO SE"
91 Maureen Way
Plymouth, MA  02360  508-224-9245