UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| RICHARD C. WHITE, JR., PRO SE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TRUSTEES OF BOSTON UNIVERSITY ) <br> ET AL., ) <br> ) <br> Defendants. ) | CIVIL ACTION NO. 04-10524 RWZ |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

I.  INTRODUCTION

Plaintiff, Richard C. White, Jr., resigned from his employment as a Boston University police officer on June 10, 2002. He claims that the various defendants violated his constitutional, statutory and common law rights during his employment and following his resignation. He names nine defendants: Trustees of Boston University (the "University"), John R. Silber (former President), Joseph P. Mercurio (Executive Vice President), Robert B. Smith (University Counsel), Robert T. Shea (Chief of Police), Lawrence Cuzzi (Police Officer), Daniel Healy (Police Officer), Robert E. Molloy (Police Captain), and Anne W. Shea (Vice President). (On occasion the defendants will be referred to collectively as the "University" or the "University Defendants.")

A generous reading of the six page narrative complaint suggests that Plaintiff asserts violations of the Civil Rights Acts, 42 U.S.C. §§ 1983, 1985; the Massachusetts Civil Rights Act, M.G.L. c. 12, § 11I; malicious prosecution; criminal negligence; and defamation. The University Defendants hereby move to dismiss the complaint in its entirety because it fails to state any claim upon which relief can be granted.

## STATEMENT OF FACTS CONTAINED IN PLAINTIFF'S COMPLAINT[1]

Plaintiff was employed as a Boston University police officer for fifteen years and was president of the Boston University Patrolmen's Association for ten years. In April 2002, he forwarded a letter to the Trustees of the University, contending that he was being "set up" to be fired because he knew of improper police behavior within the department, including larcenies, discrimination, wrongful interference with internal investigations, filing of false police reports and internal conflicts of interest (Complaint p.1). Plaintiff contends that the letter led University officials to request him to submit to a psychological/fitness for duty examination, which defamed him. Id.

Plaintiff also claims that his civil rights were violated because he is a Christian. (Complaint, p.1). He contends that his rights were violated subsequent to his resignation from employment with the University when he was accused of trespassing on University property on November 4, 2003. (Complaint, p.2). In particular, Plaintiff claims that while he was in the process of delivering videotapes to various University officials, Defendants, Sergeants Cuzzi and Healy (of the University Police) ordered all Boston University police officers to locate and arrest him "for threats."

---

[1] The defendants accept the facts as pled by the plaintiff for the purpose of this motion only.

The complaint claims that the Brookline Police Department charged Plaintiff with three counts of criminal trespassing in Brookline District Court. Plaintiff contends that he was denied "due process of law" during the initial investigation. Plaintiff alleges that the criminal complaint and pursuit of the trespassing charges constitute malicious prosecution at the direction of the University. (Complaint, pp. 2-4). Although the complaint is silent as to how the University effectuated control over the matter, Plaintiff contends that the Norfolk County District Attorney's Office and the Brookline Police Department operated under the influence of the University. (Complaint, p.5). Plaintiff states that the criminal proceedings were malicious in nature and were defamatory. (Complaint, p. 4).

II.   STANDARD OF REVIEW

Consideration of a motion to dismiss for failure to state a claim requires the Court to take as true "the well-pleaded facts as they appear in the complaint, extending [the] plaintiff every reasonable inference in his favor." Coyne v. City of Somerville, 972 F.2d 440, 442-43 (1st Cir. 1992) (citing Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 51 (1st Cir. 1990). A complaint should not be dismissed under Fed. R. Civ. P. 12(b)(6) unless "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Roeder v. Alpha Indus., Inc., 814 F.2d 22, 25 (1st Cir. 1987) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2L.Ed.2d 80 (1957)).

Pro se complaints are held to a less stringent standard than formal complaints drafted by lawyers. Hains v. Kerner, 404 U.S. 519, 520 (1972). Here, even a lenient construction of this pro se complaint reveals no set of provable facts to support Plaintiff's claim for relief. Therefore, the complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Rockwell v. Cape Cod Hospital, 26 F.3d 254, 260 (1st Cir. 1994).

Although not specifically pled, the complaint suggests claims arising under 42 U.S.C. § 1983 and § 1985, M.G.L. c. 12, §11(H) and §11(I), and common law claims of malicious prosecution, criminal negligence and defamation. Each of these claims will be analyzed in turn.

III.  ARGUMENT

    A.    The Complaint Fails To Plead The Necessary Elements Of 42 U.S.C. § 1983 Because It Fails To Allege Either State Action Or The Deprivation Of A Constitutional Right.

To state a claim under 42 U.S.C. §1983, a plaintiff must allege (1) that the defendant was acting under color of state law, and (2) that violation of rights secured by the Constitution or laws of United States took place. West v. Atkins, 487 U.S. 42, 48 (1988); Watterson v. Page, 987 F.2d 1, 7 (1st Cir. 1993). Here, Plaintiff has not alleged that University officials were acting under the color of state law at the time of any alleged incident, or that the University or its Police Department deprived him of rights secured by the Constitution.

Boston University is not a state actor. See, e.g., Missert v. Trustees of Boston University, et al., 73 F. Supp. 2d 68, 70-73 (D. Mass. 1999), aff'd. 248 F.3d 1127 (2000). The mere receipt of federal funds – a fact not asserted but acknowledged – does not transform a private entity into a state actor. Rendell-Baker v. Kohn, 457 U.S. 830, 840 (1982) (privately operated school's receipt of federal funds does not make decision to discharge employee an act of the State); Krohn v. Harvard Law School, 552 F.2d 21, 24 (1st. Cir. 1977) (private university's receipt of state financial assistance through tax exemptions and a student aid program, and its regulation by public accreditation counsel and its disciplinary authority, do not, either individually or together, constitute sufficient attributes of governmental involvement to render university's disciplinary proceedings "state action" for §1983 purposes). Thus, the financial ties that may exist between

4

federal and state government and the University are insufficient to transform the University into a state actor for the purposes of asserting a claim in this case.

In Tynecki v. Tufts University School of Dental Medicine, 875 F. Supp. 26, 30 (D. Mass. 1994) the Court considered three factors in deciding whether a private defendant's conduct constitutes state action:

> (1) whether there was a sufficient nexus between the state and the private actor to act as it did; (2) whether the private actor has assumed a traditionally public function; and (3) whether there is a sufficient 'symbiotic relationship' between the state and the private actor so that the state may be recognized as a joint participant in the challenged activity.

Tynecki, 875 F. Supp. at 31 (citations omitted).

1. Nexus/State Compulsion

The complaint fails to allege, and Plaintiff can present no evidence, that there is "a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351 (1974). Plaintiff does not allege, and cannot prove, that the effort to remove him for trespassing on private University grounds reflects the coercive power of the State. He does not allege, and cannot prove, that the State had anything to do with the trespassing violation, let alone prove the sort of "government coercion or significant encouragement" that this test requires. Tynecki, 875 F. Supp. at 31.

5

2. <u>Public Function</u>

Plaintiff also fails to allege or present evidence that an arrest order on private property can constitute an activity that is "traditionally the exclusive prerogative of the state." <u>Rockwell v. Cape Cod Hosp.</u>, 26 F.3d 254, 258-59 (1st Cir. 1994) (quoting <u>Jackson v. Metropolitan Edison</u>, 419 U.S. at 353). Indeed, it goes without saying or need of citation that the simple act of requesting that an intruder leave one's property, or calling the police for assistance when that request is rejected, has never been a traditionally exclusive government function.

3. <u>Symbiotic Relationship</u>

Again, the complaint fails to allege sufficient facts, and Plaintiff can present no evidence, that state action exists via a symbiotic relationship. "Pursuant to this test, the actions of a private party constitute state action where the State has so far insinuated itself into a position of interdependence with the private party that it must be recognized as a joint participant in the challenged activity. . . . Extensive regulation and financial aid, without more, is not sufficient to elevate [the University's] conduct to the level of state action. . . . The crucial inquiry is whether the state profited from the challenged activity." <u>Tynecki</u>, 875 F. Supp. at 33 (citations omitted). Plaintiff cannot conceivably allege or show that the Commonwealth of Massachusetts somehow profited from the University's designation of Plaintiff as a trespasser.

B. <u>The Complaint Fails To Plead A Claim Under The Massachusetts Civil Rights Act.</u>

The Massachusetts Civil Rights Act provides a state law remedy for the violation of rights secured by the Commonwealth by threats, intimidation or coercion. <u>Redgrave v. Boston Symphony Orchestra, Inc.</u>, 399 Mass. 93, 98 (1987), citing M.G.L. c. 12, § 11H. In order to recover under the Civil Rights Act, Plaintiff must establish first, that his

6

exercise or enjoyment of rights secured by the Constitutions or laws of either the United States or the Commonwealth have been interfered with, or that an attempt was made to interfere with them; and second, that the interference or attempted interference was by threats, intimidation, or coercion. See Puleio v. Commissioner of Corrections, 52 Mass. App. Ct. 302, 312 (2001); Reproductive Rights Network v. President of Univ. of Mass., 45 Mass. App. Ct. 495, 505 (1998). Plaintiff cannot meet either prong of the test with regard to any of the defendants.

Nothing in the Constitution or laws of either the United States or the Commonwealth guarantees an individual unfettered access to every facility maintained on the campus of a private university. "A university's mission is education, and decisions of this Court have never denied a university's authority to impose reasonable regulations compatible with that mission upon the use of its campus and facilities. We have not held, for example, that a campus must . . . grant free access to all of its grounds or buildings." Widmar v. Vincent, 454 U.S. 263, 267 n. 5, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981). The fact that University representatives determined that Plaintiff was trespassing on private University property does not constitute a violation of any protected right.

Plaintiff does not allege, and cannot prove any acts by the University Defendants that might possibly be construed as "threats, intimidation, or coercion." "[C]ases holding that the [MCRA] was violated have involved actual or potential physical confrontations involving a threat of harm." Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467, 474 n. 8 (1994) (where defendants trespassed and used their bodies and bicycle locks to prevent others from entering or leaving the clinic and deterred patients from obtaining abortions). Indeed, Plaintiff does not even allege that the Boston University police apprehended him. Clearly, his allegations do not fall within any of the Supreme Judicial Court's accepted definitions of "threats, intimidation, or coercion":

7

> "Threat" in this context involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm. "Intimidation" involves putting in fear for the purpose of compelling or deterring conduct. . . . In Deas v. Dempsey, 403 Mass. 468, 471, 530 N.E.2d 1239 (1988), we quoted a definition of coercion from Webster's New International Dictionary at 519 (2d ed. 1959): "the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done."

Planned Parenthood League of Mass., Inc., 417 Mass. at 474 (citations omitted). Plaintiff can offer no evidence that the University Defendants did anything to make him fearful or apprehensive of injury or harm, or put him in fear in order to compel or deter his conduct, or applied any force to constrain him to act against his own will.

C. The Complaint Fails To State The Necessary Elements Of The Applicable Sections Of 42 U.S.C. § 1985, Due To The Failure To Allege A Discriminatory Class Based Animus.

Plaintiff has not specified which section of 42 U.S.C. § 1985 he relies on in the complaint. Therefore, each is considered in turn. First, § 1985(1) is inapplicable to this action because it relates to the prevention of persons from performing their official duties.[2] Second, § 1985(2) has two parts; the first relates to interference with witnesses and jurors and is also inapplicable to the case.[3] The second part of § 1985(2) relates to

---

[2] 42 U.S.C. § 1985(1) states in relevant part:

If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties . . . the party so injured . . . may have an action for recovery of damages . . . against any one or more of the conspirators.

[3] The first part of 42 U.S.C. § 1985(2) states:

If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness is any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of

8

obstructing justice.[4] Finally, § 1985(3) relates to conspiracies to deprive persons of the equal protection of the laws.[5]

Presumably, Plaintiff's claims fall under the second part of § 1985(2) and/or § 1985(3). Each of these sections requires a plaintiff to allege some sort of class-based discrimination. Kush v. Rutledge, 460 U.S. 719, 725 (1983); Hahn v. Sargent, 523 F.2d 461, 469 (1st Cir. 1975), *cert. denied*, 425 U.S. 904 (1976). In Griffin v. Breckenridge, 403 U.S. 88, 102 (1971), the Supreme Court elucidated the requirements of a § 1985(3) claim, stating "[T]he language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirator's actions." The complaint states that Plaintiff is a "Christian," but fails to allege either discriminatory animus on the part of the University Defendants or that Plaintiff was treated differently from others similarly situated because of his status in a protected class. The complaint fails to allege any class-based discrimination, and any claims under 42 U.S.C. § 1985 must be dismissed.

---

any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment, lawfully assented to by him or of his being or having been such juror;

[4] The second part of 42 U.S.C. § 1985(2) states in relevant part:

[O]r if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of laws . . .

[5] 42 U.S.C. 1985(3) states in relevant part:

If two or more persons in any State or Territory conspire, or go in disguise on the highway or on the premises of another for the purpose of depriving either directly or indirectly the equal protection of the laws or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory the equal protection of the laws . . . the party so injured . . . may have action for the recovery of damages . . . against any one or more of the conspirators.

D.  Plaintiff Cannot Satisfy the Necessary Elements of a Malicious Prosecution Claim.

In order to recover for malicious prosecution, Plaintiff must prove: 1) that the University Defendants initiated a criminal action against him; 2) that the criminal prosecution ended in his favor; 3) that there was no probable cause to initiate the criminal charge; 4) that the defendants acted maliciously; and 5) that the acts of the defendants caused his injuries. Correllas v. Viveiros, 410 Mass. 314, 318 (1991); Wynne v. Rosen, 391 Mass. 797, 798 (1984); Beecy v. Pucciarelli, 387 Mass. 589, 593 (1982); Santiago v. Fenton, 891 F.2d 373 (1st Cir. 1989).

In the present case, the criminal complaint was initiated by the Brookline Police Department after Plaintiff violated an instruction not to trespass on University property. (Complaint, pp. 2-4). Plaintiff has not alleged and, indeed will be unable to demonstrate, that the University Defendants acted with malice or that he suffered any damages as a result of the criminal action. Thus, he cannot satisfy the requisite elements of this claim.

E.  To the Extent the Complaint Alleges Abuse of Process, It Must Be Dismissed Because It Fails to Allege the Substance of Any Ulterior Purpose.

To prevail in a claim for abuse of process, Plaintiff must prove that the University Defendants caused the Brookline District Court to issue a warrant and criminal complaint "for an ulterior purpose, i.e., to achieve some end other than the apparent end of the litigation process which has been launched." Silvia v. Building Inspector of West Bridgewater, 35 Mass. App. Ct. 451, 453 (1993). The mere fact that some form of process was initiated based upon even a groundless claim is insufficient without proof of an ulterior motive. Ladd v. Polidoro, 424 Mass. 196, 199-200 (1997).

Here, the University clearly had the right to seek criminal charges against the plaintiff for trespassing onto private property despite prior notice. Plaintiff's bare suggestion of ulterior motive is groundless. There is no evidence sufficient to satisfy the requisite elements, and this claim must be dismissed.

F.   Any Assertions of Criminal Negligence Must Be Dismissed As They Fail To State A Claim

Plaintiff states that the Boston University police were "criminally negligent" in issuing an order for his arrest. This cause of action does not exist. At common law, conduct does not become "criminal" until it passes the borders of gross negligence and enters the domain of wanton or reckless conduct. Here, Plaintiff alleges no facts demonstrating that any conduct engaged in by the University Defendants was extreme or beyond wanton disregard for the safety of others. Thus, the criminal negligence claim must fail.

To the extent Plaintiff attempts to proceed under a "negligent prosecution" theory, such a claim has been expressly rejected under Massachusetts law. See O'Connell v. Bank of Boston, 37 Mass. App. Ct. 416 (1994). Actual malice is a requisite element of a malicious prosecution claim, and an investigation that is merely negligent will not entitle Plaintiff to recover. Id. Accordingly, any negligent prosecution or investigation claims must be dismissed.

G.   Plaintiff's Complaint Fails To State A Claim Of Defamation

Defamation is the publication of a statement by someone, without privilege, that exposes another to ridicule or contempt. Corellas v. Vivieros, 410 Mass. 314, 319 (1990). Defamation encompasses the tort of slander (oral statements) as well as libel (written statements). Draghetti v. Chmielewski, 416 Mass. 808 (1994). An employer, however, has a "conditional privilege to disclose defamatory information concerning an employee when the publication is reasonably necessary to serve the employer's

11

legitimate interest in the fitness of the employee to perform his or her job". McCone v. N.E. Telephone & Telegraph Co., 393 Mass. 231 (1984) (citations omitted). This privilege applies even if the employer's statements later prove to be false. Dexter's Hearthside Restaurant v. Whitehall Co., 2 Mass. App. Ct. 217 (1987). A plaintiff may overcome this privilege only by showing that the defendants abused it. See Bratt v. Intnl. Bus. Machines Corp., 392 Mass. 508 (1984).

Here, Plaintiff complains that the University's request that he undergo fitness for duty testing was defamatory in nature. Clearly, any such request by the University is reasonably directed at serving the employer's legitimate interests and is absolutely privileged. Moreover, Plaintiff has pled no facts and identified no particular statements by any University representative that demonstrate that there was any abuse of the privilege. Indeed, it is well settled that an absolute privilege is granted for statements made "in the institution or conduct of litigation or in conferences and other communications preliminary to litigation". Dolan v. Von Zweck, 19 Mass. App. Ct. 1032 (1985) (rescript) quoting Sullivan v. Birmingham, 11 Mass. App. Ct. 359 (1981). Accordingly, testimony offered by Boston University representatives in criminal proceedings against Plaintiff is absolutely privileged and cannot form the basis of a civil defamation action. See Aborn v. Lipson, 357 Mass. 71 (1970) (the reason for the privilege is that it is more important that witnesses be free from the fear of civil liability for what they say than that a person who has been defamed by their testimony have a remedy).

Furthermore, the posting of an internal notice to University police personnel, informing them of the official outcome of the criminal proceedings, and the warning that Plaintiff must refrain from entering the University's premises, is not defamatory. The publication was necessary to provide the department with accurate information and was not otherwise distributed or made public. Plaintiff cannot demonstrate that the University

Defendants recklessly published the notice "unnecessarily, unreasonably, or excessively". See Sklar v. Beth Israel Deaconess Med. Center, 59 Mass. App. Ct. 550 (2003). Thus, Plaintiff's defamation claim must fail.

    H.    Any Claims Asserted Against Robert B. Smith, Esq, Must be Dismissed Because Pre-Litigation Statements By Counsel on Behalf Of A Client Are Absolutely Privileged

Under Massachusetts law, pre-litigation communications by counsel on behalf of a client are absolutely privileged from tort liability. See Theran v. Rokoff, 413 Mass. 590 (1992) (sending a copy of a Chapter 93A letter to a third party is absolutely privileged from liability for defamation); Sriberg v. Raymond, 370 Mass. 105 (1976) (letter sent by attorney to president of company against whom attorney's client was contemplating litigation was absolutely privileged from liability for defamation); see also Blanchette v. Cataldo, 734 F.2d 869, 877 (1st Cir. 1984) (attorney's telephone calls made in connection with conduct of litigation were absolutely privileged). The rationale for the absolute privilege is that attorneys representing clients in connection with pending or threatened litigation should not be confronted with the prospect of becoming a party to the lawsuit. To permit such suits would have a chilling effect on the activities of counsel, who are sworn to represent clients in our adversarial system zealously within the bounds of the law. As explained by the Appeals Court in describing the rationale for the absolute privilege:

> The rule exits, not because the malicious conduct of such persons ought not to be actionable, but because, if their conduct were actionable, actions would be brought against them in cases in which they have not spoken falsely or maliciously; it is not a desire to prevent actions from being brought in cases where they ought to be maintained, but the fear that if the rule were otherwise, numerous actions would be brought against persons who are acting honestly in a discharge of a duty.

Sullivan v. Birmingham, 11 Mass. App. Ct. 359, 367 (1981), quoting Veeder, Absolute Immunity and Defamation: Judicial Proceedings, 9 Colum. L. Rev. 463, 469-470 (1909);

see also <u>Sriberg</u>, 370 Mass. at 108 ("The public policy of permitting attorneys complete freedom of expression and candor in communications in their efforts to secure justice for their clients commends itself to us").

The absolute privilege was first recognized in defamation cases:

> An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.

Restatement (Second) of Torts, § 586. Massachusetts courts have long since recognized, however, that the important policy grounds underlying the privilege require broadening the scope of the privilege far beyond its original underpinnings in the defamation context. <u>Blanchette</u>, 734 F.2d at 877; <u>Sullivan</u>, 11 Mass. App. Ct. at 367 (Court held that policy underlying the absolute privilege also immunizes the counsel from any civil liability).

It is clear that any and all statements allegedly made by Attorney Smith as counsel to the University are absolutely privileged and there are no legal grounds on which Plaintiff can assert a valid claim for defamation. Indeed, all complained of statements and actions by the University's counsel were in the course of his representation of the University and prior to the commencement of litigation. Thus, Plaintiff's complaint fails to state a claim for defamation or any other civil action against Robert B. Smith, Esq. and must be dismissed.

## IV. <u>CONCLUSION</u>

For the reasons stated herein, the defendants, Trustees of Boston University, et al., respectfully request that every purported claim in Plaintiff's complaint be DISMISSED.

REQUEST FOR ORAL ARGMENT

The Defendants respectfully request this Honorable Court grant them the opportunity to be heard in oral argument.

                                            Respectfully submitted,

                                            DEFENDANTS,
                                            By their attorneys,

                                            */s/ Lawrence S. Elswit, by G.F.L.*
                                            Lawrence S. Elswit, BBO# 153900
                                            Office of General Counsel
                                            Boston University
                                            125 Bay State Road
                                            Boston, MA 02215
                                            (617) 353-2326

                                            */s/ Gerald F. Lucey*
                                            Gerald F. Lucey, BBO#306860
                                            Jeanne M. Harney, BBO#557229
                                            Nelson Kinder Mosseau & Saturley, PC
                                            45 Milk Street, 5th Floor
                                            Boston, MA 02109
                                            (617) 778-7500
                                            (617) 778-7501 (Fax)

Dated: May 6, 2004

## CERTIFICATE OF SERVICE

I, Gerald F. Lucey, hereby certify that I served a copy of the foregoing Defendants' Memorandum In Support Of Motion To Dismiss upon Richard C. White, J., 91 Maureen Way, Plymouth, MA 02360 via U.S. Mail, first class, postage prepaid this 6th day of May, 2004.

_____
Gerald F. Lucey